ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| GARAJE RIVERA, ET AL.<br><br>Apelantes<br><br>v.<br><br>MARÍA DE LOS ÁNGELES OCASIO LARACUENTES Y PATRICIA NICHOLE FARÍA OCASIO<br><br>Apeladas | **KLAN202300846**<br><br><br><br>**CONSOLIDADO** | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm. D DP2014-0131<br><br>Sobre: Daños y Perjuicios |
| GARAJE RIVERA, ET AL.<br><br>Apelantes<br><br>v.<br><br>MARÍA DE LOS ÁNGELES OCASIO LARACUENTES Y PATRICIA NICHOLE FARÍA OCASIO<br><br>Apeladas | **KLAN202300852** | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm. D DP2014-0131<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 24 de enero de 2024.

Comparecen ante este foro el Garaje Rivera, Gilberto Rivera Torres, Universal Insurance Company y Caribbean Alliance Insurance Company (en conjunto, UNIVERSAL-CAICO o "los apelantes"). Mediante los recursos consolidados de epígrafe, nos solicitan que revisemos la *Sentencia* emitida el 31 de mayo de 2023 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, notificada el 24 de agosto de 2023. En virtud del referido dictamen, el foro primario declaró *Ha Lugar*

la *Demanda* instada por María Ocasio Laracuente (en adelante, María Ocasio) y Patricia Faria Ocasio (en adelante, Patricia Faria; en conjunto, "las apeladas"). El Tribunal de Primera Instancia concluyó que el daño sufrido por las apeladas se debió a la negligencia de los apelantes y estableció la siguiente proporción de responsabilidad: (1) UNIVERSAL-CAICO en un 75% de los daños; y (2) Garaje Rivera y Gilberto Rivera Torres en un 25% de los daños. Además, el foro primario concedió las siguientes partidas de compensación: (A) $50,000.00 en concepto de daños morales a favor de María Ocasio;(B) $10,000.00 en concepto de daños morales a favor de Patricia Faria; y (C)$3,000.00 por la pérdida de uso del vehículo de motor. Por último, el Tribunal de Primera Instancia impuso el pago de $12,000.00 en concepto de honorarios de abogados y el pago de costas e intereses legales.

Por los fundamentos que se exponen a continuación, **REVOCAMOS** la sentencia apelada en cuanto a UNIVERSAL-CAICO y **CONFIRMAMOS** la misma en cuanto a Garaje Rivera.

**I.**

Conforme surgen del expediente ante nuestra consideración, los hechos procesales que precedieron al recurso de epígrafe son los que a continuación exponemos.

El 22 de junio de 2010, Patricia Faria sufrió un accidente de tránsito mientras conducía un vehículo Mitsubishi Outlander Gris del año 2005.[1] Para esa fecha, María Ocasio era la propietaria registral de la referida unidad y contaba con una póliza de seguro de auto

---

[1] Con tablilla GCN-261, número de serie JA4LX31F55U010532.

expedida por UNIVERSAL-CAICO. Por ello, presentaron la reclamación correspondiente, la cual fue acogida, evaluada y ajustada por el señor Eliud Gómez Cruz (en adelante, Gómez Cruz) del Departamento de Reclamaciones de UNIVERSAL-CAICO. En seguida, UNIVERSAL-CAICO les cursó una oferta de reparación por los daños que recibió el vehículo asegurado y, a su vez, les proveyó un Directorio de Red de Talleres de Referencia.

Entonces, Patricia Faria solicitó que le recomendaran un taller para reparar su vehículo y Gómez Cruz le indicó que *"aunque se supone que no te recomiende a nadie, llévale el vehículo a Garaje Rivera y dile a Gilberto Rivera que vas de mi parte".*[2] Eventualmente, Patricia Faria acudió a Garaje Rivera donde fue reparado el vehículo en cuestión. No obstante, María Ocasio y Patricia Faria al recoger el vehículo reparado se percataron que la puerta trasera del pasajero del lado del conductor tenía un sello que había sido fijado con cinta adhesiva y le solicitaron al Garaje Rivera que resolvieran el asunto del sello.

El 5 de noviembre de 2012, luego de dos años de la reparación y por el interés de adquirir un nuevo vehículo, Patricia Faria acudió a la Unidad de Vehículos Hurtados de la Policía de Puerto Rico en Ponce (en adelante, Unidad de Vehículos Hurtados) para asegurarse que las piezas reemplazadas por Garaje Rivera estuviesen debidamente registradas. Sin embargo, el 7 de noviembre de 2012, María Ocasio tuvo que encargarse de la referida gestión por ser la propietaria registral del vehículo y allí fue recibida por el Agente Torres. Posteriormente,

---

[2] Sentencia del 31 de mayo de 2013, Anejo I, págs. 1-23 del Apéndice del recurso KLAN20230846.

el Agente Torres le notificó a María Ocasio que ocuparía el vehículo, ya que las piezas de reemplazo estaban registradas bajo otro vehículo. María Ocasio fue sometida a interrogatorio y transportada hasta su residencia en una patrulla de la Policía de Puerto Rico.

En enero de 2013, la Unidad de Vehículos Hurtados trasladó el referido vehículo hasta el Garaje Rivera para la remoción de las piezas. Luego de varios trámites, el Garaje Rivera entregó el vehículo reparado el viernes, 1 de marzo de 2013. Es decir, cuatro meses más tarde desde la ocupación.

Así las cosas, el 20 de mayo de 2013, María Ocasio y, su hija, Patricia Faria presentaron una *Demanda* sobre daños y perjuicios en contra de Garaje Rivera, Gilberto Rivera Torres, su esposa y la Sociedad de Bienes Gananciales (en adelante, Garaje Rivera); y en contra de UNIVERSAL-CAICO.[3] En síntesis, alegaron que los apelantes eran responsables por los daños y angustias mentales que sufrieron como resultado de la ocupación del referido vehículo. Además, solicitaron las siguientes indemnizaciones: (A) $50,000.00 por daños y angustias mentales de María Ocasio; (B) $25,000.00 por daños y angustias mentales de Patricia Faria; (C) $10,000.00 por la pérdida del uso de su vehículo; (D) $500.00 por el alquiler de un vehículo; (E) $500.00 por gastos médicos y, finalmente, (F) una suma por las costas y honorarios de abogados.

El 13 de junio de 2013, UNIVERSAL-CAICO presentó *Contestación a Demanda* donde negaron la mayoría de las

---

[3] Demanda, Anejo II, págs. 24-35 del Apéndice del recurso KLAN20230846.

alegaciones de la *Demanda*.[4] Mientras que el 27 de junio de 2013, Garaje Rivera presentó *Contestación a Demanda*[5] negando responsabilidad y, a su vez, presentó *Reconvención* donde reclamó daños por el incumplimiento del Artículo 13 de la Ley para la Protección de la Propiedad Vehicular de 1987, según enmendada,[6] que responsabiliza al dueño del vehículo a reinscribir y/o identificar con la Policía de Puerto las piezas que se instalen en un vehículo.

Posteriormente, el 16 de septiembre de 2013, UNIVERSAL-CAICO presentó una *Demanda Coparte* en contra de Garaje Rivera alegando que estos fueron quienes realizaron el reemplazo de las piezas del vehículo asegurado y que de existir responsabilidad era única y exclusivamente atribuible al Garaje Rivera.[7] De igual manera, el 1 de octubre de 2013, Garaje Rivera presentó su *Contestación a Demanda Coparte*.[8]

Luego de varios trámites procesales, el 10 de agosto de 2015, el foro primario dictó *Sentencia Parcial* y anotó la rebeldía[9] contra UNIVERSAL-CAICO.[10] Como resultado, el 1 de abril de 2016, UNIVERSAL-CAICO acudieron en

---

[4] Contestación a Demanda, Anejo IV, págs. 52-58 del Apéndice del recurso KLAN20230846.
[5] Contestación a la Demanda y Reconvención, Anejo III, págs. 36-51 del Apéndice del recurso KLAN20230846.
[6] Ley Núm. 8 del 5 de agosto de 1987, 9 LPRA § 3212.
[7] Demanda Coparte, Anejo V, págs. 59-60 del Apéndice del recurso KLAN20230846.
[8] Contestación a Demanda Coparte, Anejo V, págs. 61-63 del Apéndice del recurso KLAN20230846.
[9] En cuanto a la anotación de rebeldía el tribunal expresó: "[U]n análisis sosegado del tracto procesal del caso nos obliga a razonablemente concluir que, a pesar de las ordenes emitidas por el Tribunal, ni Universal Insurance Co. (Universal) ni Caribbean Alliance Insurance Co. (CAICO) cumplieron con lo establecido por las Reglas 6.2, 6.4, 34.1, 34.2(b) y 34.3(b)(3) y (c) de Procedimiento Civil, por lo que procede que dictemos Sentencia en Rebeldía contra amabas, eliminándoles las alegaciones de la Contestación de la Demanda, y dando por admitidas las alegaciones de la parte demandante contra estas. "
[10] Sentencia Parcial del 10 de agosto de 2015, Anejo VI, págs. 64-75 del Apéndice del recurso KLAN20230846.

recurso de *Apelación* identificado con la codificación alfanumérica **KLAN201600442**.

Así las cosas, el 19 de mayo de 2017, un panel hermano de este Tribunal de Apelaciones confirmó la anotación de rebeldía, revocó el dictamen recurrido y ordenó que se celebrara una vista evidenciaría a los efectos de determinar una cuantía en concepto de daños y perjuicios.[11]

En desacuerdo, UNIVERSAL-CAICO acudió al Tribunal Supremo mediante recurso de *Certiorari* identificado con la codificación alfanumérica CC-2017-0660. Sin embargo, el 1 de diciembre de 2017, nuestro más alto foro declaró *No Ha Lugar* la solicitud de *Certiorari* y envío el caso de epígrafe a la sala correspondiente del Tribunal de Primera Instancia.[12]

A esos efectos, el 5 de junio de 2019, el foro primario celebró la vista evidenciaría y, el 11 de junio de 2019, dictó *Sentencia Parcial* donde concedió las siguientes partidas: (A) $30,000.00 por daño moral a favor de María Ocasio; (B) $10,000.00 por daño moral a favor de Patricia Faria; y (C) $3,000.00 por la pérdida del uso del vehículo.[13]

En lo aquí pertinente, el 22 de agosto de 2019, UNIVERSAL-CAICO presentó un recurso de *Apelación*, identificado con la codificación alfanumérica KLAN201900943, donde alegó que el foro primario erró al concluir que se habían probado los daños. Este Tribunal de Apelaciones dictó *Sentencia*, el 30 de junio de 2020,

---

[11] Sentencia del 19 de mayo de 2017, Anejo VII, págs. 56-69 del Apéndice del recurso KLAN20230852.
[12] Resolución del 1 de diciembre de 2017, Anejo VIII, págs. 70-71 del Apéndice del recurso KLAN20230852.
[13] Sentencia Parcial del 11 de julio de 2019, Anejo XI, págs. 109-123 del Apéndice del recurso KLAN20230852.

y determinó que la sentencia recurrida no incluyó los casos guías examinados para valorizar los referidos daños ni los cómputos para ajustar las cuantías al valor actual.[14] Por ello, ordenó que se celebrara un juicio plenario para adjudicar la responsabilidad en proporción al grado de negligencia.[15]

En consecuencia, el 24 de marzo de 2021, el foro primario llevó a cabo una vista de estado sobre los procedimientos donde Garaje Rivera no compareció. Debido al incumplimiento de Orden y a solicitud de las apeladas, el Tribunal de Primera Instancia eliminó la contestación a la demanda y anotó la rebeldía contra el Garaje Rivera. Posteriormente, el 9 de junio de 2021, dictó *Sentencia* e impuso lo siguiente: (1) responsabilidad de un 75% de los daños a UNIVERSAL-CAICO; (2) responsabilidad de un 25% de los daños a Garaje Rivera; (3) compensación de $30,000.00 en concepto de daños morales a favor de María Ocasio; (4) compensación de $10,000.00 en concepto de daños morales a favor de Patricia Faria; (5) el pago de $3,000.00 por la pérdida de uso del vehículo de motor y, por último, (6) el pago costas, intereses legales y una suma adicional de $10,000.00 en concepto de honorarios de abogados.[16] No obstante, el 16 de junio de 2021, el foro primario realizó una enmienda NUNC PRO TUNC a la Sentencia del 9 de junio de 2021.[17] Mediante dicha *Sentencia NUNC PRO TUNC*, el Tribunal de Primera

---

[14] Sentencia del 30 de junio de 2020, Anejo XII, págs. 124-150 del Apéndice del recurso KLAN20230852.
[15] *Íd.*
[16] Sentencia del 9 de junio de 2021, Anejo XVI, págs. 167-185 del Apéndice del recurso KLAN20230852.
[17] Sentencia *Nunc Pro Tucn* del 9 de junio de 2021, Anejo XVII, págs. 186-204 del Apéndice del recurso KLAN20230852.

Instancia aumentó la compensación a favor de María Ocasio a $50,000.00.[18]

Inconforme, el 28 de junio de 2021, UNIVERSAL-CAICO presentó una *Moción de Reconsideración* en la cual solicitó que se reconsidera la *Sentencia NUNC PRO TUNC* por no cumplir con la Orden de este Tribunal de Apelaciones.[19] Asimismo, el 1 de julio de 2021, Garaje Rivera presentó una *Moción de Reconsideración* donde solicitó un relevo de sentencia bajo la regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2.[20] Sin embargo, el 21 de diciembre de 2021, el Tribunal de Primera Instancia dictó Resolución para confirmar su determinación inicial.[21]

Aun en desacuerdo, UNIVERSAL-CAICO presentó el 27 de enero de 2022 un recurso de *Apelación* identificado con la codificación alfanumérica KLAN202200069. Igualmente, el 24 de marzo de 2022, Garaje Rivera presentó un recurso de *Apelación*. En síntesis, ambas partes plantearon los mismos fundamentos que en la *Moción de Reconsideración* presentada ante el foro primario. Por lo cual, el 5 de abril de 2022, este Panel del Tribunal de Apelación ordenó la consolidación de ambos casos. Así las cosas, el 15 de junio de 2022, dictamos *Sentencia* y revocamos la sentencia apelada en cuanto a los daños concedidos.[22] Además, ordenamos la celebración de una vista evidenciaría para analizar y adjudicar el porciento de responsabilidad de cada parte

---

[18] *Íd.*

[19] Moción de Reconsideración, Anejo XVIII, págs. 205-219 del Apéndice del recurso KLAN20230852.

[20] Moción de Reconsideración y/o Relevo de Sentencia al Palio de la Regla 49.2, Anejo XXII, págs. 252-262 del Apéndice del recurso KLAN20230852.

[21] Resolución del 21 de diciembre de 2021, Anejo XXI, págs. 247-251, del Apéndice del recurso KLAN20230852.

[22] Sentencia del 15 de junio de 2022, Anejo XXIII, págs. 263-287, del Apéndice del recurso KLAN20230852.

y efectuar los cómputos correspondientes por conceptos de daños.[23]

En cumplimiento con nuestra Orden, el Tribunal de Primera Instancia celebró una vista evidenciaría para el 29 de marzo de 2023. Finalmente, el foro primario dictó *Sentencia* el 31 de mayo de 2023 y concluyó que el daño sufrido por las apeladas se debió a la negligencia de los apelantes.[24] Por ello, estableció lo siguiente: (1) responsabilidad de un 75% de los daños a UNIVERSAL-CAICO; (2) responsabilidad de un 25% de los daños a Garaje Rivera; (3) compensación de $50,000.00 en concepto de daños morales a favor de María Ocasio; (4) compensación de $10,000.00 en concepto de daños morales a favor de Patricia Faria; (5) compensación de $3,000.00 por la pérdida de uso del vehículo de motor y, por último, (6) el pago costas, intereses legales y una suma adicional de $12,000.00 en concepto de honorarios de abogados.[25] Sobre la imposición de honorarios abogados, el Tribunal de Primera Instancia expresó que:

> "A través del transcurso de los procedimientos, los demandados se aferraron al planteamiento de que las demandantes no sufrieron daños. Sin embargo, surge de los testimonios de la Sra. Ocasio Laracuente y su hija Patricia Faria, vertidos en dos ocasiones, que enfatizaron sobre los sufrimientos y angustias mentales sufridos. Aun así, los demandados continuaron con el argumento de la inexistencia de daños prolongando este litigio por más de doce años. Además, no podemos perder de perspectiva el abultado expediente del caso que refleja los reiterados incumplimientos de las Ordenes del Tribunal, y la evasión al cumplimiento con las disposiciones legales relevantes al mecanismo del descubrimiento de prueba y las Reglas de Procedimiento Civil por parte de los codemandados. A pesar de los procedimientos hechos por el Tribunal sobre las consecuencias de sus incumplimientos, la desatención a las ordenes emitidas fue de tal grado, que nos obligo dictar sentencia en rebeldía tanto contra UNIVERSAL/CAICO, como contra Garaje Rivera y Gilberto Rivera Torres. Muchos de los

---

[23] *Íd.*
[24] Sentencia del 31 de mayo de 2023, Anejo XXVI, págs. 293-315, del Apéndice del recurso KLAN20230852.
[25] *Íd.*

gastos, trabajos, molestias y sacrificios que han sufrido innecesariamente las codemandantes muy bien pudieron haberse evitado." *Íd.*

Inconformes con lo resuelto, Garaje Rivera sometió el recurso **KLAN20230846** que nos ocupa y señaló la comisión de los siguientes errores:

> ERR[Ó] EL TPI EN LA DETERMINACI[Ó]N DE LA CUANT[Í]A DE DAÑOS LA CUAL ES EXAGERADA Y/O IMPROCEDENTE POR SER PASAJERA.
>
> ERR[Ó] EL TPI AL IMPONER EN LA SENTENCIA LA CANTIDAD DE $3,000.00 A LA PARTE DEMANDADA POR P[É]RDIDA DE VEH[Í]CULO CUANDO DE LA PRUEBA NO SE SUSTENTA DICHA CANTIDAD.
>
> ERR[Ó] EL TRIBUNAL AL HACER UNA DETERMINACI[Ó]N DE TEMERIDAD A LA PARTE DEMANDADA IMPONIENDO LA CANTIDAD DE $12,000.00.

De otra parte, UNIVERSAL-CAICO sometió el recurso **KLAN20230852** que nos ocupa y señaló la comisión de los siguientes errores:

> **Primer error**
> Erró el TPI al evaluar la prueba y determinar que la recomendación del empleado de la parte apelante fue la causa eficiente de los daños reclamados por la parte apelante.
>
> **Segundo error**
> Erró el TPI al evaluar la prueba y determinar que los daños de la parte apelada se debieron con mayor probabilidad a la negligencia de la parte apelante.
>
> **Tercer error**
> Erró el TPI en la distribución del porciento de responsabilidad que impuso a cada codemandado.
>
> **Cuarto error**
> Erró el TPI al evaluar la prueba y valorar los daños morales de la demandante MOL en $50,000.00 y los daños morales de PFO en $10,000.00.
>
> **Quinto error**
> Erró el TPI al conceder a la parte apelada $3,000.00 por la pérdida del uso del vehículo.
>
> **Sexto error**
> Erró el TPI al conceder a la parte apelada $12,000.00 en concepto de costas, intereses legales y honorarios de abogado.

Luego de evaluar ambos recursos, el 27 de septiembre de 2023, emitimos una Resolución en la que ordenamos la consolidación de ambos casos, a tenor con lo dispuesto

en la Regla 17 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 17.

Sobre esto, el 30 de noviembre de 2023, las apeladas sometieron su *Alegato en Oposición de la Parte Demandante Apelada*. Tras varias mociones presentadas por todas las partes, el 30 de octubre de 2023, emitimos otra Resolución en la que autorizamos la presentación de una transcripción de la prueba oral debidamente estipulada. A esos efectos, el 29 de noviembre de 2023, las partes de manera conjunta presentaron la referida transcripción de prueba oral estipulada.

En consecuencia, el 14 de diciembre de 2023, UNIVERSAL-CAICO presentó su *Alegato Suplementario*. De igual forma, el 18 de diciembre de 2023, Garaje Rivera presentó su *Alegato Suplementario*.

Transcurrido el término concedido, las apeladas no presentaron su Alegato Suplementario.

Con el beneficio de la comparecencia escrita de ambas partes en ambos recursos y la transcripción de la prueba oral, damos estos por perfeccionados y procedemos a resolver.

## II.

### -A-

El Código Civil de 2020, en su Artículo 1815, establece que la responsabilidad civil extracontractual "se determina por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad." 31 LPRA §11720. La cadena de sucesos que motivó la *Demanda* en el caso de epígrafe aconteció en el 2010, previo a la vigencia del nuevo ordenamiento. Por ende, aplican los preceptos del derogado Código Civil de 1930. Es decir, el derecho

aplicable en este caso será aquel vigente al momento de los hechos.

En nuestro ordenamiento jurídico, el artículo 1802 del Código Civil de 1930 rigió, durante su vigencia, la responsabilidad derivada de actos u omisiones culposas o negligentes. La referida disposición establece, en lo pertinente, que "el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". 31 LPRA § 5141.

Es decir que, para probar una causa de acción por daños y perjuicios, es necesario que la parte demandante demuestre, mediante preponderancia de la prueba, (1) que ha habido un acto u omisión culposa o negligente; (2) que hay una relación causal entre el acto y el daño sufrido; y (3) que se ha causado un daño real al reclamante. Véase, *Camacho Rivera v. Richard Mitchell*, Inc., 202 DPR 34 (2019); *Doble Seis Sport TV v. Depto. Hacienda*, 190 DPR 763 (2014); *Nieves Díaz v. González Massas*, 178 DPR 820 (2010).

El Tribunal Supremo define el concepto de culpa o negligencia como "la falta del debido cuidado, que a la vez consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Nieves Díaz v. González Massas*, supra. De este modo, precisa destacar que, en casos de responsabilidad extracontractual, el factor de previsibilidad es un elemento indispensable. *Íd*.

En Puerto Rico, rige la doctrina de causalidad adecuada. Sobre este principio, el Tribunal Supremo ha manifestado que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que

ordinariamente lo produce según la experiencia general". *Íd.; Colón Santos v. Coop. Seg. Mult. PR,* 173 DPR 170 (2008); *Toro Aponte v. ELA,* 142 DPR 464 (1997); *Soto Cabral v. ELA,* 138 DPR 298 (1995); *Jiménez v. Pelegrina Espinet,* 112 DPR 700, 704 (1982). El deber de previsión, a su vez, está regido por la figura del hombre prudente y razonable, o buen padre de familia. *Nieves Díaz v. González Massas,* supra.

En síntesis, el deber de previsión "no se extiende a todo peligro imaginable […] sino a aquel que llevaría a una persona prudente y razonable a anticiparlo". *Pacheco v. A.F.F.,* 112 DPR 296, 300 (1982). Se trata de un riesgo que debe estar apoyado en "probabilidades y no en meras posibilidades". *López v. Porrata Doria,* 169 DPR 135, 164-165 (2006).

Nuestro más alto foro ha expresado que "daño" constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención de una norma jurídica y por el cual ha de responder otra persona. *Nieves Díaz v. González Massas,* supra. Existen dos tipos de daños: (1) los daños especiales, conocidos como daños físicos, patrimoniales, pecuniarios o económicos; y (2) los daños generales, conocidos como daños morales. Por un lado, los daños especiales se refieren a "toda aquella pérdida que recae sobre bienes objetivos, pues éstos admiten valoración económica debido a que impactan directamente el patrimonio del perjudicado." Íd. Mientras que los daños generales son aquellos infligidos a las creencias, los sentimientos, la dignidad, la estima social o la salud física o psíquica del perjudicado. Íd. No obstante, la

valoración de los daños generales descansa en la sana discreción del juzgador basada en los hechos que considere probados. Íd.

-B-

En reiteradas ocasiones, el Tribunal Supremo ha expresado que, en las acciones de daños y perjuicios, la estimación y valoración de daños es una tarea difícil y angustiosa, dado que "no existe un sistema de computación que permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas". *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016); *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 909 (2012).

Por tal razón, los tribunales apelativos deben guardar deferencia a las valorizaciones de daños que realizan los foros de primera instancia, debido a que estos son los que tienen contacto directo con la prueba testifical y están en mejor posición para emitir un dictamen. *Rodríguez et al. v. Hospital et al.*, supra. Ahora bien, los tribunales apelativos intervendrán con las estimaciones de daños realizadas por el Tribunal de Primera Instancia cuando la cuantía concedida sea exageradamente alta o ridículamente baja. Íd. Véase, además, *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, 179 DPR 774, 787 (2010); *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 509-510 (2009).

Por otro lado, el ejercicio de valoración de daños conlleva cierto grado de especulación y elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. *Santiago Montañez v. Fresenius Medical*, supra.

Además, no existen dos casos idénticos, debido a que cada uno tiene sus circunstancias particulares. Íd.

Por tanto, al comparar las cuantías concedidas en casos previos, hay que ajustarlas al valor presente. *Santiago Montañez v. Fresenius Medical*, supra; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123 (2013); *Rodríguez et al. v. Hospital et al.*, supra; *Herrera, Rivera v. SLG Ramírez Vicéns*, supra.

En *Santiago Montañez v. Fresenius Medical*, supra, el Tribunal Supremo advirtió a los jueces del Tribunal de Primera Instancia respecto a la importancia de detallar específicamente en los dictámenes los casos similares utilizados como referencia o punto de partida para la estimación y valoración de daños, y el cómputo realizado para establecer las cuantías que se concedan. Esto, debido a que las compensaciones otorgadas en casos previos constituyen un punto de partida y referencia útil para que los tribunales apelativos puedan pasar juicio sobre las concesiones otorgadas por el foro primario. Íd.

-C-

La Regla 44.1(d) de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 44.1, faculta a los tribunales a imponer el pago de una cuantía por concepto de honorarios de abogado. Al respecto, la referida disposición establece lo siguiente:

> En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. […]

El concepto de temeridad es amplio. *Torres Montalvo v. García Padilla*, 194 DPR 760, 778 (2016). El propósito

de este mecanismo es penalizar al que, con su conducta, ha obligado a la parte adversa en un litigio a incurrir en gastos y, con ello, le ha causado innecesariamente molestias e inconvenientes. *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 867 (2008); *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999). De este modo, se persigue imponer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Montalvo v. García Padilla*, citando a *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010).

En fin, la temeridad es una conducta que afecta el buen funcionamiento de los tribunales y la administración de la justicia. *Montalvo v. García Padilla, supra.* Por tanto, la imposición del pago de honorarios de abogado, de conformidad con la Regla 44.1, *supra*, supone que el tribunal haga una determinación de temeridad. Dicha determinación "…descansa en la sana discreción del tribunal sentenciador". *Raoca Plumbing v. Trans World*, 114 DPR 464, 468 (1983). Así, el tribunal impondrá la cuantía que el juzgador entienda corresponde a la conducta temeraria. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013); citando a *Andamios de PR v. Newport Bonding*, *supra*.

-D-

Según nuestro Tribunal Supremo, la rebeldía "es la posición procesal en que se coloca la parte que ha dejado de ejercitar su derecho a defenderse o de cumplir con su deber procesal". *Rivera Figueroa v. Joe's European*

*Shop*, 183 DPR 580, 587 (2011). El propósito del mecanismo de la rebeldía es evitar la dilación como estrategia de litigio. *Íd.*

Ahora bien, el mecanismo de la anotación de la rebeldía se encuentra codificado en nuestro derecho procesal civil en la Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1. Particularmente, esta dispone que la anotación de rebeldía procederá en las siguientes situaciones:

> Cuando una parte contra la cual se solicite una sentencia que conceda un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o Secretaria anotará su rebeldía.

> El tribunal a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3).

> Esta anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b).

> La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía.

En esencia, un tribunal -*motu proprio* o a solicitud de parte- podrá anotarle la rebeldía a una parte que: (1) no compareció al proceso después de haber sido debidamente emplazada; (2) no contesta o alega en el término concedido por ley, habiendo comparecido mediante alguna moción previa de donde no surja la intención clara de defenderse; (3) se niega a descubrir su prueba después de habérsele requerido mediante los métodos de descubrimiento de prueba; o, (4) ha incumplido con alguna orden del tribunal. Véase, *Rivera Figueroa v. Joe's European Shop*, supra, pág. 588.

Con referencia a la parte a la que se le anota la rebeldía, esta renuncia a presentar prueba contra las alegaciones de la demanda y a levantar defensas

afirmativas, con excepción de las defensas de falta de jurisdicción y la de dejar de exponer una reclamación que justifique la concesión de un remedio. *Ocasio v. Kelly Servs.,* 163 DPR 653, 671-672 (2005); *Hernández v. Espinosa,* 145 DPR 248, 272 (1998); *Continental Ins. Co. v. Isleta Marina*, 106 DPR 809, 815 (1978). Entre los derechos que retiene el litigante en rebeldía que ha comparecido previamente están el de ser notificado de los señalamientos del caso, asistir a las vistas, contrainterrogar a los testigos de la parte adversa, impugnar la cuantía de daños reclamada y apelar la sentencia. *Íd.*

**III.**

De entrada, debemos destacar que el foro primario le anotó la rebeldía a UNIVERSAL-CAICO desde la *Sentencia Parcial* emitida el 10 de agosto 2015 y, a los apelantes en conjunto, desde la *Sentencia* emitida el 31 de mayo de 2023. Sin embargo, tal y como repasamos en el derecho aplicable, dicha anotación de rebeldía no les impide a los apelantes presentar el recurso de autos ante este honorable Tribunal de Apelaciones y señalar los errores interpuesto. Por ello, podemos revisar el grado de negligencia y los daños por los cuales estos fueron encontrados responsable.

**-A-**

A continuación, procedemos a la discusión conjunta del primer, segundo y tercer señalamiento de error planeados por UNIVERSAL-CAICO. En síntesis, argumentan que el foro primario erró: (1) al determinar que los daños reclamados se debieron a la negligencia y recomendación ofrecida por UNIVERSAL-CAICO, y (2) al

distribuir el porciento de responsabilidad entre los apelantes. Tienen razón. Veamos.

El Tribunal de Primera Instancia concluyó que la situación de peligro, que produjo los daños sufridos en el caso de autos, fue creada por UNIVERSAL-CAICO. Explicó que los daños sufridos por las apeladas fueron el resultado de la negligencia del empleado de UNIVERSAL-CAICO al recomendar a Garaje Rivera, pese a que este conocía la prohibición impuesta por su patrono en cuanto a no sugerir proveedores de servicios. A esos efectos, el foro primario estableció un 75% de responsabilidad sobre UNIVERSAL-CAICO y un 25% de responsabilidad sobre Garaje Rivera.

Sin embargo, surge de las propias determinaciones de hechos emitidas por el foro primario lo siguiente:

> "[…]
> 7. El Garaje Rivera era uno de los talleres incluidos en el Directorio Red de Talleres de referencia de UNIVERSAL/CAICO.
>
> 8. El Sr. Gilberto Rivera Torres es el propietario del Garaje Rivera.
>
> 9. La reparación del vehículo se realizó en el Garaje Rivera.
>
> 10. Todas las piezas utilizadas para realizar la reparación del referido vehículo fueron compradas e instaladas por el Garaje Rivera.
>
> […]
> 28. El Sr. Gilberto Rivera Torres recibió la unidad a finales de enero en el Garaje Rivera, pero le indico a la Sra. Ocasio que tenía que esperar por la reparación porque tenía el taller lleno.
>
> 29. El viernes 1 de marzo de 2013, casi cuatro (4) meses más tarde desde la ocupación, la Sra. Ocasio recibió finalmente el vehículo reparado." [26]

---

[26] Sentencia del 31 de mayo de 2023, Anejo XXVI, pág. 299-300, del Apéndice del recurso KLAN20230852.

Como podemos ver, el propio expediente es claro y demuestra que Garaje Rivera fue quien: (1) reparó el vehículo, (2) compró e instaló las piezas pertenecientes a otro vehículo; (3) omitió el trámite para reasignar y registrar los cambios de piezas a la autoridad pertinente; y (4) tardó casi cuatro meses en reparar el vehículo. Los hechos determinados no indican o sugieren participación de UNIVERSAL-CAICO en la compra e instalación de la referida puerta o el mal manejo del sello de la misma.

Además, determinamos que no le correspondía a UNIVERSAL-CAICO supervisar, regular o monitorear la forma y manera en que Garaje Rivera realizaba una reparación que fue pagada con la compensación dada por UNIVERSAL-CAICO a la parte apelada por los daños cubiertos por la póliza de seguro. Igualmente, las alegaciones bien formuladas de las apeladas y las determinaciones de hechos no establecen que UNIVERSAL-CAICO interviniera de ninguna forma en la reparación del vehículo.

Al análisis anterior debemos añadir que las apeladas no presentaron prueba adicional que nos ayude a establecer una participación directa de UNIVERSAL-CAICO en la cadena de eventos conducentes a establecer la alegada negligencia de estos. Por ejemplo, no hay prueba que demuestre que UNIVERSAL-CAICO o alguno de sus empleados condicionara el pago de la reclamación al uso de Garaje Rivera; que la aseguradora o alguno de sus empleados recibiera algún tipo de comisión (legal o ilegal) por referir a la parte apelada al Garaje Rivera; tampoco se estableció que UNIVERSAL-CAICO tuviera conocimiento de actuaciones negligentes de Garaje

Rivera, tales como determinaciones en su contra de tribunales o agencias administrativas.

En las determinaciones de hechos de este caso se establece que UNIVERSAL-CAICO les facilitó a apeladas el Directorio de Red de Talleres de Referencia. Igualmente, uno de sus empleados recomendó a Garaje River. Esos son las únicas instancias en las que UNIVERSAL-CAICO participó de la cadena de hechos de este caso. Como antes indicado, esos hechos, sin otro tipo de prueba de participación directa, no son suficientes para establecer que los mismos fueran la causa o parte de la causa que provocó los daños de este caso. Por tanto, es forzoso concluir que Garaje Rivera tiene única y exclusivamente la responsabilidad por los daños reclamados en el caso de autos. Por ello, determinamos que erró el foro de instancia en adjudicarle negligencia a UNIVERSAL-CAICO.

**-B-**

Por estar relacionados, atendemos en conjunto el primer y segundo señalamiento de error de Garaje Rivera.[27] En síntesis, estos apelantes alegan que el Tribunal de Primera Instancia erró al valorar los daños morales de las apeladas en $50,000.00 y $10,000.00 respectivamente, y asignar una partida de $3,000.00 en compensación de la pérdida del uso del vehículo.

Tras evaluar detalladamente la Sentencia apelada, consideramos que el Tribunal de Primera Instancia llevó a cabo un ejercicio prudente, razonable y consonó con la normativa de derecho aplicable a la teoría de valoración de daños, al cuantificar los daños sufridos por las

---

[27] UNIVERSAL-CAICO también alegó como error el monto de los daños, sin embargo, ante la ausencia de negligencia de parte de estos discutimos este error en cuanto a Garaje Rivera.

apeladas. Conforme al derecho aplicable, el foro primario evaluó y utilizó casos como referencia o punto de partida para su estimación y valoración de daños.

Somos del criterio que este tribunal revisor no debe intervenir con la estimación de daños realizado por el foro primario, debido a que las cuantías concedidas no son exageradamente altas ni ridículamente baja. Además, el foro primario tuvo contacto directo con la prueba testifical y, por ello, se encontró en mejor posición para emitir el referido dictamen.

Igualmente, consideramos que nuestra jurisprudencia ha sido consiste en expresar: que el ejercicio de valoración de daños conlleva cierto grado de especulación y elementos subjetivos, y que no existe un sistema de computación que asegure un resultado exacto donde todas las partes estén satisfechas. *Santiago Montañez v. Fresenius Medical*, supra.

En consideración a lo antes expuestos, el primer y segundo señalamiento de error de Garaje Rivera, no fueron cometidos. Por ello, confirmamos la sentencia apelada en cuanto a los daños estimados y adjudicados por el foro primario.

-C-

Por último, atendemos el sexto señalamiento de error de UNIVERSAL-CAICO y el tercer señalamiento de error de Garaje Rivera. En conjunto, los apelantes alegan que el foro primario erró al hacer una determinación de temeridad e imponer el pago de honorarios de abogados, costas e intereses legales.

Tal como indicamos al exponer el derecho aplicable, la determinación de temeridad y subsecuente imposición de una cuantía por concepto de honorarios de abogado

descansa en el ejercicio discrecional del tribunal, al que debemos deferencia.

Así las cosas, tras evaluar la actuación del foro primario en el caso de autos, concluimos que no estamos en posición de interferir con el ejercicio discrecional a los efectos de anotar la rebeldía a la parte apelante Garaje Rivera. Sin embargo, en vista a que revocamos parcialmente el dictamen impugnado, no procede la imposición de honorarios de abogados en cuanto a UNIVERSAL-CAICO.

En síntesis, se cometió el sexto señalamiento de error de UNIVERSAL-CAICO y no así el tercer señalamiento de error de Garaje Rivera. Se confirma la sentencia apelada en cuanto a la imposición de honorarios de abogados contra Garaje Rivera y se revoca en cuanto a UNIVERSAL-CAICO.

**IV.**

Por los fundamentos antes expuestos, se **REVOCA** en su totalidad la sentencia apelada en cuanto a Universal Insurance Company y Caribbean Alliance Insurance Company. Además, se **CONFIRMA** en su totalidad la Sentencia en contra de Garaje Rivera.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones